UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FRANCISCO MUNOZ ORTIZ,<br><br>                Petitioner,<br><br>    v.<br><br>WILLIAM PELHAM BARR, et al.,<br><br>                Respondents. | CASE NO. C20-497-RSM-BAT<br><br>**REPORT AND RECOMMENDATION** |

## INTRODUCTION

Petitioner is an immigration detainee in U.S. Immigration and Customs Enforcement ("ICE") custody at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, a private detention facility run by The GEO Group, Inc. ("GEO"). Proceeding through counsel, he filed a habeas petition pursuant to 28 U.S.C. § 2241 and complaint for injunctive relief seeking his immediate release from detention or other relief the Court deems appropriate. Dkt. 12 (1st Am. Pet.). He asserts that his current detention violates his Fifth Amendment due process rights because his prolonged pre-removal order detention is unreasonable and because of the risks posed by the COVID-19 pandemic. *Id.* ¶ 13.

Currently before the Court is the Government's motion to dismiss, Dkt. 13, which Petitioner opposes, Dkt. 20. Having considered the parties' submissions, the balance of the

REPORT AND RECOMMENDATION - 1

record, and the governing law, the Court recommends that both the Government's motion to dismiss and Petitioner's habeas petition be GRANTED in part and DENIED in part. Specifically, Petitioner's request for immediate release should be denied, but he should be granted a new bond hearing, within 30 days of an order adopting this recommendation. If Petitioner is not granted a new bond hearing within that time frame, it is recommended his petition for release be granted.

## BACKGROUND

### A. Immigration Proceedings

Petitioner is a 45-year old native and citizen of Mexico who first entered the United States without inspection on an unknown date in 1984.[1] Dkt. 15 (Bostock Decl.) ¶ 62. In January 2018, immigration officers encountered him at the Lemon Creek Correctional Center in Juneau, Alaska, where he was serving a 160-day custodial sentence for a conviction for Assault in the Fourth Degree. *Id.* ¶ 65. On January 5, 2018, ICE took him into custody, and the U.S. Department of Homeland Security ("DHS") issued a Notice to Appear charging him with removability. *Id.* ¶ 66. At a master calendar hearing on February 14, 2018, Petitioner denied that he was removable as charged. *Id.* ¶ 68. Since this time, his case has bounced between the immigration judge ("IJ") and the Board of Immigration Appeals ("BIA"). *See id.* ¶¶ 69-71, 74-77, 79, 81. On March 30, 2020, an IJ issued a written decision sustaining an amended basis for removability. *Id.* ¶ 82. On April 27, 2020, the IJ denied Petitioner's motion to reconsider. *Id.* ¶ 83. A master calendar hearing was scheduled for May 19, 2020. *Id.* ¶ 84.

### B. Bond Hearings

Petitioner has been detained since ICE took him into custody in January 2018. During this time, he has had two bond hearings. On February 13, 2018, Petitioner appeared with counsel

---

[1] Additional details regarding Petitioner's immigration history are included in his first amended habeas petition, Dkt. 12, exhibits to his original habeas petition, Dkt. 1-1, and the May 11, 2020 declaration of Drew Bostock, Dkt. 15.

REPORT AND RECOMMENDATION - 2

1  for a bond hearing under 8 U.S.C. § 1226(a). *Id.* ¶ 67. The IJ denied bond, finding that Petitioner

2  had not met his burden to establish that he was not a danger to the community. *Id.* Petitioner did

3  not appeal this determination. *Id.*

4       On January 16, 2020, Petitioner had a second bond hearing under § 1226(a) and was

5  again represented by counsel. *Id.* ¶ 80. In support of his request for bond, Petitioner submitted a

6  letter from his former employer, letters of support from family members, previous bond

7  materials, and the BIA's decision remanding for further proceedings. Dkt. 14-17 (IJ's Bond

8  Memo.) at 4. At the hearing, Petitioner's counsel stated that Petitioner has three U.S. citizen

9  children; Petitioner shares joint custody of the two oldest with their mother, and the State of

10 Alaska planned on awarding custody of the youngest child to Petitioner until he was unable to

11 make the court date because he was detained. *Id.* Counsel stated that if released, Petitioner would

12 live with his mother in Juneau, Alaska, and could be rehired by his former employer, who

13 considered him a good employee. *Id.* Counsel further argued that Petitioner has a strong

14 incentive to be a law-abiding citizen because he is eligible to adjust his status and become a legal

15 permanent resident. *Id.*

16      DHS opposed Petitioner's request for bond and filed evidence regarding Petitioner's

17 immigration background and criminal convictions, which include property damage (1991);

18 minor in possession of alcohol (1993, two incidents in 1994); probation violations; driving under

19 the influence and without a license (1999); disorderly conduct—challenge to fight (2000, 2004);

20 assault, use of reckless force or violence (2001); harassment with offensive physical contact

21 (2014); fourth degree assault with a domestic violence finding (2018); and violations of his

22 conditions of release. *Id.*

23      The IJ denied bond, finding that Petitioner did not meet his burden of establishing that he

REPORT AND RECOMMENDATION - 3

does not present a danger to the community. *Id.* at 5. In his written memorandum, the IJ summarized the parties' evidence and then explained his reasoning:

> Respondent has resided in the United States for more than thirty years. He has substantial ties in the United States, including his United States citizen children, mother, and siblings. The Court acknowledges that Respondent may have the opportunity to adjust status; however, until his removal proceedings are completed, the Court finds that Respondent should remain in custody due to his troubling and significant criminal history. The Court further finds that Respondent's attorney minimized Respondent's criminal past by stating that there is "no evidence that he is a danger to the community at this point." Particularly, the Court is concerned about Respondent's recent 2018 assault conviction. The record contains graphic photographs of the assault victim with a swollen, bloody eye, and visible fingerprint bruising on her neck. Respondent was intoxicated during the incident and has a history of other alcohol related convictions, such as driving under the influence. In the police report, the victim accused Respondent of punching and slapping her face, and "choking" her by putting his hands around her neck and squeezing. The violent nature of this incident demonstrates that Respondent is a danger to the community and possibly his victim. Respondent's counsel claims he has been rehabilitated since he has not committed any crimes; but notably, Respondent's detention for the past two years has prevented him from violating the law. Lastly, in addition to his most recent assault incident, Respondent has had other person-related offenses.

*Id.* at 4-5 (citations to bond record omitted).

Petitioner timely appealed to the BIA, which dismissed his appeal on June 22, 2020. Dkt. 23-1. The BIA agreed with the IJ's reasoning and concluded Petitioner did not meet his burden regarding danger. *Id.* at 3. The BIA rejected Petitioner's claims that the IJ failed to consider his positive equities, conducted his own fact-finding into the most recent assault conviction, and used civil detention as a punitive measure. *Id.* at 4.

C.    **Conditions of Confinement and Petitioner's Health**

The NWIPC has the capacity to house 1,575 detainees and historically operates near capacity. Dkt. 15 ¶ 6. As of May 5, 2020, however, the facility housed only 650 detainees. *Id.* By August 13, 2020, ICE had further reduced the detainee population to 471, less than 30% of capacity. *Dawson v. Asher*, No. C20-409-JLR, Dkt. 136-1 (8/13/2020 Bostock Decl.) ¶ 6 (W.D.

REPORT AND RECOMMENDATION - 4

Wash).² ICE has administered more than 745 COVID-19 tests to NWIPC detainees. *Id.* Although some detainees have tested positive while isolated in the new intake monitoring housing unit, no detainee in the general population has tested positive for COVID-19. *Id.*

ICE Health Services Corps ("IHSC") has identified detainees whose medical records indicate they have an underlying condition that would place them at higher risk for serious illness due to COVID-19, including pregnant detainees or those who have given birth in the last two weeks; detainees over 60 years of age; and detainees of any age having chronic illnesses that make them immune-compromised, including but not limited to blood disorders, chronic kidney disease, compromised immune systems (e.g., ongoing treatment such as chemotherapy or radiation, received an organ or bone marrow transplant, taking high doses of corticosteroids or other immunosuppressant medications), endocrine disorders, metabolic disorders, heart disease, lung disease, or neurological and neurologic and neurodevelopmental disorders. Dkt. 16 (Malakhova Decl.) ¶ 28. In response to the preliminary injunction issued in *Fraihat v. U.S. Immigration and Customs Enforcement*, --- F. Supp. 3d ----, 2020 WL 1932570 (C.D. Cal. Apr. 20, 2020), IHSC further expanded this list of criteria. Dkt. 16 ¶ 29.

IHSC has not identified Petitioner as having an underlying medical condition that places him at higher risk for serious illness due to COVID-19. *Id.* ¶ 31. In his May 25, 2020 declaration, however, Petitioner attests that beginning in the middle of April 2020, he began suffering from abdominal pain, chronic rectal bleeding with pain, and an enlarged testicle. Dkt. 18-14 (Ortiz Decl.) ¶¶ 9-10. He visited the medical clinic at the NWIPC on April 17, May 6, May 8, and May 11, 2020. *See id.* The doctor has scheduled him for an ultrasound at an outside facility, *see id.*,

---

² The Court takes judicial notice of the statistics in Officer Bostock's August 13, 2020 declaration filed in *Dawson* because this information is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Holland v. King Cty. Adult Det.*, No. C12-791-JLR, 2013 WL 1192763, at *2 (W.D. Wash. Mar. 22, 2013).

REPORT AND RECOMMENDATION - 5

but the parties have not apprised the Court of any new diagnoses that would place him at high risk for serious illness due to COVID-19.

**D.    Federal Habeas Action**

On April 1, 2020, Petitioner initiated the instant action. Dkt. 1. In his first amended petition, he asserts two bases for habeas relief. *See* Dkt. 12. First, he alleges that his prolonged pre-removal order detention of over two years is constitutionally infirm and resulted in him losing his parental rights to his youngest daughter. Second, he alleges that his continued detention in light of the COVID-19 pandemic violates his Fifth Amendment due process rights. As relief, he seeks release from detention or other relief the Court deems appropriate.

On April 7, 2020, Petitioner filed a motion for a temporary restraining order ("TRO") directing ICE to immediately release him, Dkt. 4, which the Honorable Ricardo S. Martinez denied on April 10, 2020, Dkt. 10. Judge Martinez determined that Petitioner had not shown a likelihood of success or serious questions going to the merits of his claims. *Id.* at 9. With respect to Petitioner's prolonged detention claim, Judge Martinez explained that detention during removal proceedings is constitutionally permissible unless it becomes "indefinite" within the meaning of *Zadvydas v. Davis*, 533 U.S. 678 (2001), and Petitioner had not satisfied this standard. *Id.* at 10-11. Judge Martinez further explained that due process concerns related to prolonged detention are generally addressed through bond hearings, which Petitioner did not request in his TRO motion. *Id.* With respect to Petitioner's conditions of confinement claim, Judge Martinez found that Petitioner's detention during the COVID-19 pandemic did not amount to punishment in violation of his due process rights. *Id.* at 13-15.

The Court subsequently ordered the Government to respond to Petitioner's habeas petition and complaint for injunctive relief. Dkt. 11. On May 11, 2020, the Government filed the

1  habeas return and motion to dismiss that is currently before the Court. Dkt. 13. Petitioner then

2  filed his opposition brief and supporting evidence, Dkts. 19, 18-1 – 18-19, and the Government

3  filed its reply, Dkt. 21. Thereafter, the parties filed several updates with the Court. Dkts. 22-24.

**DISCUSSION**

The parties dispute whether Petitioner's detention violates his Fifth Amendment due process rights because (1) he is subject to prolonged pre-removal order detention, and/or (2) the conditions of his detention during the COVID-19 pandemic amount to punishment.[3] As discussed below, the Court concludes that Petitioner is entitled to a bond hearing where the government must justify his detention by clear and convincing evidence, but he has not established a constitutional violation that would entitle him to immediate release.

**A.     Prolonged Pre-Removal Order Detention**

Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of non-citizens, such as Petitioner, who are in removal proceedings. 8 U.S.C. § 1226; *see also Demore v. Kim*, 538 U.S. 510, 530 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."). Section 1226(a) grants DHS the discretionary authority to determine whether a noncitizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the noncitizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory.[4] 8 U.S.C. § 1226.

---

[3] In moving to dismiss, the Government also argues that Petitioner failed to exhaust his prolonged-detention claim and lacks standing to bring his conditions of confinement claim. The exhaustion issue is moot as the BIA has since affirmed the IJ's most recent bond determination, and the Government has withdrawn its challenge to Petitioner's standing, *see* Dkt. 21 at 3 n.2.

[4] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role

REPORT AND RECOMMENDATION - 7

When a noncitizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination, including the setting of bond. *See* 8 C.F.R. § 236.1(c)(8). After the initial custody determination, the detainee may request a bond redetermination by an IJ. 8 C.F.R. § 236(d)(1). At the bond redetermination hearing, the burden is on the detainee to show to the satisfaction of the IJ that he warrants release on bond. *See In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006). In making a bond decision under § 1226(a), an IJ must consider whether the detainee "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Id.* (citing *In re Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976)). An IJ also may consider any number of discretionary factors, including: (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the detainee to flee persecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States. *Id.*

If the IJ denies bond, the detainee may appeal to the BIA. 8 C.F.R. § 236.1(d)(3). If the BIA affirms the IJ's decision, the detainee may seek habeas relief from the district court. *Leonardo v. Crawford*, 646 F.3d 1157, 1159-61 (9th Cir. 2011); *Sun v. Ashcroft*, 370 F.3d 932, 941 (9th Cir. 2004). Federal district courts have jurisdiction to review bond hearing determinations for constitutional claims and legal error, *Singh v. Holder*, 638 F.3d 1196, 1202

---

in administering immigration courts and the Board of Immigration Appeals. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 8

(9th Cir. 2011), but they cannot second guess an IJ's discretionary judgment regarding the application of § 1226(a), 8 U.S.C. § 1226(e).

Once an IJ has made an initial bond redetermination, a detainee's request for a subsequent bond redetermination must be made in writing and must show that the detainee's circumstances have changed materially since the prior bond redetermination. 8 C.F.R. § 1003.19(e).

In this case, Petitioner's prolonged detention does not entitle him to release. A noncitizen detained under § 1226(a) is entitled to release if he can show that his detention is indefinite within the meaning of *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1062-63 (2008). In *Prieto-Romero*, the Ninth Circuit held that the petitioner's detention was not indefinite because the government could repatriate him to Mexico if his petition for review was unsuccessful. *Id.* Petitioner here does not present any evidence that ICE will not be able to remove him if he is ultimately ordered removed. Accordingly, Petitioner's removal is not indefinite, and he is not entitled to immediate release.

Petitioner also challenges the constitutional sufficiency of his most recent bond hearing, arguing that the IJ erred by placing the burden on him, rather than the government. Dkt. 20 at 21-22. The Court agrees. In *Singh*, the Ninth Circuit held that due process requires the government to justify prolonged civil detention by clear and convincing evidence. 638 F.3d at 1203-05; *see also Aleman Gonzalez v. Barr*, 955 F.3d 762, 781 (9th Cir. 2020) (affirming the constitutional due process holding in *Singh*). Because the IJ placed the burden on Petitioner, he erred as a matter of law.[5] *See Singh*, 638 F.3d at 1205 (holding that IJ erred in not holding government to clear and convincing evidence standard at prolonged detention bond hearing).

---

[5] The Government asks the Court to analyze Petitioner's procedural due process claim under the three-part test from *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Dkt. 13 at 14-16. Given that *Singh* squarely governs Petitioner's

REPORT AND RECOMMENDATION - 9

1       Nevertheless, Petitioner is only entitled to a new bond hearing if this error was
2  prejudicial. *See id.* Petitioner argues that the IJ's error likely affected the outcome of his bond
3  hearing. Dkt. 20 at 22-24. He notes that he has been sober for over two-and-a-half years, has had
4  no disciplinary issues while in custody, and has many other positive equities that mitigate
5  recidivism, including a large immediate and extended family in the United States, a job to return
6  to, and the opportunity to be granted relief from removal. *Id.* With respect to his criminal history,
7  Petitioner asserts that he is not a career criminal, most of his offenses occurred more than five
8  years ago and only intermittently over the course of decades, and his criminal history does not
9  reflect a trajectory of violent tendencies, graduated severity, or dissociative behavior. *Id.* at 23.
10 Finally, Petitioner contends that the IJ did not consider whether conditions of release could
11 mitigate any danger he poses, including mandatory counsel, electronic monitoring, and/or
12 reporting requirements. *Id.* at 24.
13      In *Singh*, the Ninth Circuit found prejudice where the evidence of dangerousness was
14 equivocal, citing the fact that the petitioner had stopped using drugs, which was the impetus for
15 his "largely nonviolent" crimes of petty theft, receiving stolen property, and substance abuse.
16 638 F.3d at 1205. Petitioner's convictions are more significant than those in *Singh*, but many
17 appear to be related to alcohol use, which Petitioner has refrained from for over two years.
18 Petitioner also has not had any disciplinary issues while in custody. Although it is a close call,
19 the Court cannot conclude that the clear and convincing evidence standard would not have
20 affected the outcome of the bond hearing. Accordingly, the Court recommends directing the
21 Government to provide Petitioner with a new bond hearing within 30 days of the date this
22 recommendation is adopted, and if the Government fails to do so, that Petitioner's habeas

---

constitutional challenge to the bond hearing he already received, the Court concludes that the *Mathews* test does not apply here.

REPORT AND RECOMMENDATION - 10

petition requesting release be granted.[6] In addition, the bond hearing should comply with the procedural requirements of *Singh*.

## B.        Conditions of Detention

To evaluate the constitutionality of a civil detention condition under the Fifth Amendment, a district court must determine whether those conditions "amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 135 S. Ct. 2466, 2473-74 (2015). Punishment may be shown through an express intent to punish or a restriction or condition that "is not reasonably related to a legitimate governmental objective." *Bell*, 441 U.S. at 539; *see also Kingsley*, 135 S. Ct. at 2473-74 (clarifying that "a pretrial detainee can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose"). Petitioner raises only the second test, arguing that the risk he faces of serious illness or death from COVID-19 exceeds the inherent discomforts of confinement and is excessive in relation to a legitimate governmental interest.[7] Dkt. 20 at 11-14.

The Supreme Court has recognized legitimate government interests in ensuring that noncitizens appear for their removal or deportation proceedings and protecting the community from harm. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 836 (2018); *Demore*, 538 U.S. at 520-22;

---

[6] Contrary to Petitioner's assertion that a new bond hearing would not provide him with "additional safeguards under the circumstances," Dkt. 20 at 24, it is appropriate for the IJ, not this Court, to consider whether the Government has presented clear and convincing evidence of Petitioner's danger to the community. If Petitioner is dissatisfied with the results of the bond hearing, he may appeal to the BIA and, if appropriate, file another habeas petition in this Court.

[7] A civil detainee may also show a Fifth Amendment violation where the government fails to provide for his or her reasonable safety. *See Pimentel-Estrada v. Barr*, --- F. Supp. 3d ----, 2020 WL 2092430, at *11 (W.D. Wash. Apr. 28, 2020). Reasonable safety claims are analyzed under an objective deliberate indifferent test. *See id.* (citing, *inter alia*, *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)). Petitioner indicates he is not pursuing such a claim. *See* Dkt. 20 at 10-11. Even if he were, he would not be entitled to relief because, as discussed below, he has not shown that he is at high risk of serious illness or death if he should contract COVID-19.

REPORT AND RECOMMENDATION - 11

*Zadvydas*, 533 U.S. at 690-91. Petitioner fails to establish that the conditions of his detention are excessive in relation to these legitimate objectives. Although Petitioner testifies that he has been experiencing medical problems, he has not presented evidence that he has been diagnosed with any condition that places him at higher risk for serious illness should he contract COVID-19. Indeed, the Government has presented evidence that Petitioner is *not* at higher risk. Dkt. 16 ¶ 31. Given that Petitioner has not shown he is at higher risk for serious illness or death from COVID-19, the Court concludes that he is not detained under conditions that amount to punishment in violation of his Fifth Amendment rights. *See Moturi v. Asher*, No. C19-2023-RSM-BAT, 2020 WL 2084915, at *4 - *5 (W.D. Wash. Apr. 30, 2020) (finding that the petitioner failed to establish a likelihood of success on the merits of his punitive conditions of confinement claim because his medical history did not put him at risk for serious illness or death from COVID-19). Accordingly, the Court recommends that his request for release on this basis be denied.[8]

## CONCLUSION AND RIGHT TO OBJECT

The Court recommends that both the Government's motion to dismiss, Dkt. 13, and Petitioner's first amended habeas petition and complaint for injunctive relief, Dkt. 12, be GRANTED in part and DENIED in part. Specifically, the Court recommends that Petitioner's request for immediate release be denied but that the Government be ordered to provide Petitioner with a new bond hearing within 30 days of the date this recommendation is adopted, and if the Government fails to do so, that Petitioner's habeas petition requesting release be granted. In addition, the bond hearing should comply with the procedural requirements of *Singh*.

This Report and Recommendation is not an appealable order. Therefore, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

---

[8] Because the Court's decision rests of Petitioner's lack of risk factors, the Court need not discuss the parties' additional evidence regarding the conditions at the NWIPC or other detention facilities.

assigned District Judge enters a judgment in the case. Objections, however, may be filed and served upon all parties no later than **September 3, 2020**. The Clerk should note the matter for **September 4, 2020**, as ready for the District Judge's consideration if no objection is filed. If objections are filed, any response is due within 14 days after being served with the objections. A party filing an objection must note the matter for the Court's consideration 14 days from the date the objection is filed and served. The matter will then be ready for the Court's consideration on the date the response is due. Objections and responses shall not exceed 12 pages. The failure to timely object may affect the right to appeal.

DATED this 20th day of August, 2020.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge